UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ALLSTATE INSURANCE COMPANY, as Subrogee    No. 14- CV-00444
of Lawrence F. Dooling and Barbara A. Dooling,

                              Plaintiff,

                -against-

LONG ISLAND POWER AUTHORITY, NATIONAL
GRID, JOHN DOES 1-10, and XYZ ENTITIES 1-10,

                             Defendants.
------------------------------------------------------------------X

## MEMORANDUM OF LAW
## IN OPPOSITION TO PLAINTIFF'S APPEAL OF AND/OR OBJECTION TO
## MAGISTRATE'S ORDER

## INTRODUCTION

Defendants, LONG ISLAND POWER AUTHORITY (hereinafter "LIPA") and NATIONAL GRID ELECTRIC SERVICES LLC (hereinafter "NATIONAL GRID") respectfully submit this Memorandum of Law in opposition to plaintiff ALLSTATE INSURANCE COMPANY's (hereinafter "ALLSTATE") appeal of and/or objection to the Orders of The Honorable Anne Y. Shields, United States Magistrate Judge, dated May 26, 2015 and July 15, 2015. Judge Shields correctly found that the cause and origin consultant's file, which allegedly is only one report of January 3, 2013,[1] is discoverable because it is 1) material prepared in the course of ALLSTATE's ordinary course of business in investigating a claim; and 2) material needed by the defendants to prevent an undue hardship in the preparation of a defense to this claim because of ALLSTATE's destruction of the fire scene before the defendants were provided with an opportunity to have its own consultants inspect the fire scene.

## STATEMENT OF FACTS

This case concerns property damage that occurred at the home of ALLSTATE's insured, Mr. Dooling, located at 3 Foxboro Road, Hampton Bays, New York as a result of a fire that took place on October 31, 2012 at approximately 5:16 am. As per ALLSTATE's claim log, they were notified about the loss on October 31, 2012 at 10:47 am and by 4:36 pm that day, a notice was sent to all claim handlers that "[n]o mitigation, third party access or entry by any individual to be made to the risk location pending engineer's investigation into the origin and cause associated with this claim loss. Evidence may and can be compromised and recovery lost if strict

---

[1] In Judge Shield's Order of May 26, 2015, page 1, by writing the following, she decided to shorten the "cause and origin electrical engineering file" to "the Report.": At a discovery conference held on May 8, 2012, counsel raised a dispute as to whether Allstate must produce its cause and origin electrical engineering file (the "Report") generated in the course of investigating the fire at the Dooling residence. Defendants have never limited their request to just one (1) report.

compliance is not met." As per the claims log, on November 1, 2012, Mr. Paradise of ALLSTATE writes that the "engineer is scheduled to come Monday 11/7 and I directed the insured contractor not to disturb the area around the fire origination until then." Plaintiff's counsel has admitted that Mr. John F. Pflanz, a cause and origin consultant, was hired by ALLSTATE to investigate this loss and did so by visiting the loss location on November 5, 2012. As per the claims log, on November 8, 2012 at 11:59 am, it is noted by a Mr. William Van Mason of ALLSTATE that he gave the insured permission to have his contractor to start the renovation process. It is undisputed that the defendants were not notified about the potential for subrogation and/or the need to perform a cause and origin investigation prior to this time.

The defendants have produced their records, which reveal that a fire call specifically relating to the Dooling residence was received on October 31, 2012, but due to the devastating effects of Superstorm Sandy, LIPA/NATIONAL GRID could not send anyone to respond. The East Quogue Fire Department, however, responded to the scene and safely extinguished the fire. The first time anyone on behalf of LIPA/NATIONAL GRID arrived at the Dooling residence in response to the fire call was on November 13, 2012, but this was a mere service call by a serviceman (not a cause and origin investigator), who simply noted that there was a "burnt up meter man" and that the customer needed his own electrician to address this condition. This is the only record that specifically relates to the Dooling residence and/or that shows someone on behalf of LIPA/NATIONAL GRID actually stepped foot on the Dooling residence. However, by this time, remediation and repair work on the Dooling home had already commenced.

The defendants produced additional records not specific to the Dooling residence but relating to the electrical circuit on which the Dooling residence was part of.[2] These records show

---

[2] Plaintiff's counsel makes a false statement that that defendants "have refused to describe the actions of the

3

a power outage occurring on October 30, 2012 at 4:22 am and then restoration of power by October 30, 2012 at 10:45 pm through temporary repairs performed on the south side of Squires Avenue, which is almost seven (7) hours before the fire! Further work in the form of reinstalling multiple sections of primary was performed at the same location of Squires Avenue on November 1 and November 2, 2012.  As the Court can see, this work was not performed on the Dooling property or even on Foxboro Road and was in response to the damage caused by Superstorm Sandy. Simply put, the servicemen that performed work as per these records were not present in the area to investigate a fire loss at the Dooling residence. Thus, there is no basis in fact for plaintiff's counsel's statement that "[d]efendants investigated the subject property and removed items from the scene." This is simply not true, and any statement that defendants removed an allegedly missing meter from the time of the fire until Mr. Pflanz's inspection on November 5, 2012 amounts to pure speculation on plaintiff's counsel's part.

At no time were the defendants notified by ALLSTATE or its counsel of the possibility of a subrogation action with an invitation to enter upon the Dooling property to perform a joint inspection of the loss location before the fire scene and all its telling evidence was destroyed during the remediation and repair process. Perhaps this is why initial subrogation counsel, allegedly retained on November 1, 2012 as per plaintiff's counsel's statement on page 2 of his Memorandum of Law, was taken off the case in December of 2012 and the firm of de Luca Levine LLC was retained, as per plaintiff's counsel's statement on page 5 of his Memorandum of Law.

---

line crew and have refused to produce or even identify the line crews that performed this work," when defendants' depositions haven't even commenced due to plaintiff's continual objections to producing relevant material that should have been produced in initial disclosures.

4

a power outage occurring on October 30, 2012 at 4:22 am and then restoration of power by October 30, 2012 at 10:45 pm through temporary repairs performed on the south side of Squires Avenue, which is almost seven (7) hours before the fire! Further work in the form of reinstalling multiple sections of primary was performed at the same location of Squires Avenue on November 1 and November 2, 2012. As the Court can see, this work was not performed on the Dooling property or even on Foxboro Road and was in response to the damage caused by Superstorm Sandy. Simply put, the servicemen that performed work as per these records were not present in the area to investigate a fire loss at the Dooling residence. Thus, there is no basis in fact for plaintiff's counsel's statement that "[d]efendants investigated the subject property and removed items from the scene." This is simply not true, and any statement that defendants removed an allegedly missing meter from the time of the fire until Mr. Pflanz's inspection on November 5, 2012 amounts to pure speculation on plaintiff's counsel's part.

At no time were the defendants notified by ALLSTATE or its counsel of the possibility of a subrogation action with an invitation to enter upon the Dooling property to perform a joint inspection of the loss location before the fire scene and all its telling evidence was destroyed during the remediation and repair process. Perhaps this is why initial subrogation counsel, allegedly retained on November 1, 2012 as per plaintiff's counsel's statement on page 2 of his Memorandum of Law, was taken off the case in December of 2012 and the firm of de Luca Levine LLC was retained, as per plaintiff's counsel's statement on page 5 of his Memorandum of Law.

---

refused to describe the actions of the line crew and have refused to produce or even identify the line crews that performed this work," when defendants' depositions haven't even commenced due to plaintiff's continual objections to producing relevant material that should have been produced in initial disclosures.

## ARGUMENT

On May 26, 2015, The Honorable Anne Y. Shields issued an eight (8) page Order with regard to defense counsel's request for ALLSTATE's "cause and origin electrical engineering file (the "Report") generated in the course of investigating the fire at the Dooling residence," recognizing ALLSTATE's position that "such documents are covered by the attorney work product privilege." (See pg. 1 of Order)  This Order was issued after consideration of defendants' counsel's two (2) page letter with four (4) pages of exhibits (in compliance with Judge Shields' page limit for the submissions) and plaintiff's counsel's five (5) page letter with twenty-two (22) pages of exhibits.  Judge Shields correctly found that ALLSTATE retained a cause and origin consultant one (1) day after the fire, who performed an inspection of the fire scene five (5) days after the fire, and that it was "necessary for Allstate to determine the cause and origin of the fire as part of its normal course of business." (See pg. 5 of Order)  Judge Shields also correctly found that even if the Report was subject to work product privilege, the defendants would "suffer undue hardship in defending itself without the Report" because the "scene was irrevocably changed once remediation began, and the premises was no longer available for any other party to conduct a cause and origin inspection." (See pg. 7 of Order)  These findings, supported by the facts and law, should not be disturbed.

It is well-settled law that "[a] magistrate judge is empowered by the Federal Magistrate's Act and Federal Rules of Civil Procedure 72 to make findings as to non-dispositive pretrial matters, such as discovery matters, which may not be disturbed by a district judge absent a determination that such findings were "clearly erroneous or contrary to law.  Under the 'clearly erroneous' standard of review, a district court may reverse a magistrate's finding only if it is left with the definite and firm conviction that a mistake has been committed.  Similarly, under the

'contrary to law' standard of review, a district court may reverse a finding only if it finds that the magistrate failed to apply or misapplied relevant statutes, case law or rules of procedure. Pursuant to this highly deferential standard of review, magistrate judges are thus afforded broad discretion in resolving discovery disputes, and reversal is appropriate only if that discretion is abused. A court abuses its discretion when its decision rests on an error of law or on a clearly erroneous factual finding, or when its decision—though not necessarily the product of a legal error or a clearly erroneous factual finding-cannot be located within the range of permissible decisions. Thus, a party seeking to overturn a discovery order bears a heavy burden." Garcia v. Benjamin Group Enter., 800 F.Supp. 2d 399, 403 [E.D.N.Y. 2011]) Plaintiff's counsel has not even come close to satisfying this heavy burden, and thus counsel's request to overturn, vacate, and/or sustain plaintiff's objection to the Orders of Judge Shields, dated May 26, 2015 and July 15, 2015, should be denied.

With regard to the issue of privilege, Judge Shields correctly determined that ALLSTATE, in the ordinary course of its business, retained a cause and origin investigator, Mr. Pflanz, one (1) day after the fire, who performed an inspection of the fire scene five (5) days after the fire. Thus, any record of this investigator (reports, photos, notes, etc.) is discoverable as material prepared in the ordinary course of ALLSTATE's business, including a his report of January 3, 2013, which plaintiff's counsel represents is this investigator's only record. (See Safeco Ins. Co. of Am. v. M.E.S., Inc., 2013 U.S. Dist. LEXIS 55726, 2013 WL 1680684 [E.D.N.Y. Apr. 16, 2013])

Plaintiff's counsel appears to argue that ALLSTATE's ordinary course of business ended when Mr. Pflanz performed his inspection on November 5, 2012 and issued his January 3, 2013 report because ALLSTATE had already made a decision on coverage by November 1, 2012. Notwithstanding the fact that the record lacks proof as to when the coverage decision was made,

even if this were true, it is well settled law that an insurance company's ordinary course of business not only entails the determination of coverage, but also includes damage assessment as well as the decision on whether to pursue subrogation. (See Weber v Paduano, (2003 U.S. Dist. LEXIS 858, 2003 WL 161340 [S.D.N.Y. Jan. 14, 2003] (holding that "an investigation into the potential for subrogation is simply part of an insurer's ordinary practice of investigating all issues arising from an accident involving its insureds.") The key factor is not when a coverage determination was made but when ALLSTATE made the decision on subrogation, and plaintiff's counsel has offered no evidence on this issue. Thus, the products of Mr. Pflanz's investigation to include photographs, handwritten notes, reports, etc. are discoverable as material prepared in the course of ALLSTATE's ordinary course of business in determining the cause and origin of the fire to assist ALLSTATE in making decisions with regard to coverage, damage assessment, and the potential for subrogation.

With regard to the issue of need, the simple, undisputed fact is that ALLSTATE promptly hired its own cause and origin investigator and allegedly retained counsel as early as November 1, 2012, but did not think it necessary to preserve the fire scene and notify the defendants of the potential for subrogation and the need for an inspection of the scene. Rather, ALLSTATE authorized its insured to begin the remediation and repair process right after Mr. Pflanz performed his inspection on November 5, 2012. Is this because Mr. Pflanz did not find evidence to support a subrogation case? Whatever the case might be, the fire scene was destroyed without the defendants ever being provided with the opportunity to conduct their own inspection/investigation. Hence, the dire need for the Pflanz investigation file that may or may not provide the defendants with answers to their many questions. It must be noted that the defense hasn't filed a motion to dismiss as a sanction for spoliation motion because it is taking all reasonable steps to recreate

the fire scene before entertaining the viability of such dispositive motion practice. However, with constant stonewalling by plaintiff's counsel with regard to the production of ALLSTATE's cause and origin investigator's file, defendants will likely be forced to file the motion for dismissal as a sanction for spoliation of key evidence that has left the defendants prejudicially bereft of an appropriate means to confront plaintiff's claims with incisive evidence.

## CONCLUSION

It is respectfully submitted that the Order of May 26, 2015 and Order of July 15, 2015 be upheld, as Judge Shields' findings were not "clearly erroneous or contrary to law." ALLSTATE was correctly ordered to produce its cause and origin investigation file as material prepared in the ordinary course of its business. Further, the Judge Shields correctly determined that even if the file was privileged, the defendants made the necessary showing that without the file, they will continue to suffer an undue hardship in presenting any meaningful defense to this claim.

Dated: Syosset, New York
August 6, 2015

Respectfully submitted,

_____
Kathleen S. Commander, Esq. (KSC 9340)
HAMMILL, O'BRIEN, CROUTIER, DEMPSEY,
PENDER & KOEHLER, P.C.
Attorneys for Defendants
LONG ISLAND POWER AUTHORITY and
NATIONAL GRID ELECTRIC SERVICES LLC
Office and P.O. Address
6851 Jericho Turnpike, Suite 250
P.O. Box 1306
Syosset, New York 11791
(516) 746-0707
kcommander@hocd.com